SUPERIOR COURT
OF THE
STATE OF DELAWARE

E. SCOTT BRADLEY                                          1 The Circle, Suite 2
        JUDGE                                          GEORGETOWN, DE 19947

July 12, 2018

Patrick J. Collins, Esq.                    Adam D. Gelof, Esq.
Collins & Associates                        Department of Justice
716 N. Tatnall Street                       114 East Market Street
Wilmington, DE 19801                        Georgetown, DE 19947

RE:   *State v. Derrick Sewell*
      **ID No: 1305008035**

Dear Counsel:

This is my decision on Defendant Derrick Sewell's timely-filed Amended Motion for Postconviction Relief. Sewell was convicted of Assault in the First Degree, two counts of Possession of a Firearm During the Commission of a Felony, Aggravated Menacing, Possession of a Firearm By a Person Prohibited, Receiving a Stolen Firearm, and Offensive Touching.

The convictions arose out of a shooting in West Rehoboth that occurred during an outdoor party on May 10, 2013. Sewell was in a car with two friends, Precious Tiggs and Raheem Conquest. They arrived at the party and confronted Howard Whaley and Marvin Burton. A fight ensued, at which time Tiggs passed Sewell a handgun which he used to shoot Whaley. Tiggs and Conquest reached plea

agreements with the State and testified against Sewell. The State filed, and I granted, a motion to declare Sewell an habitual offender on certain offenses. I sentenced Sewell to 86 years and 30 days at Supervision Level 5, suspended after serving 81 years at Supervision Level 5 for probation. I had to sentence Sewell to an unsuspendible 81 years at Supervision Level 5 because he was an habitual offender.

Sewell alleges that his trial counsel did not properly communicate to him the State's plea offers. More specifically, Sewell alleges that Trial Counsel did not (1) advise him of the sentencing consequences of being an habitual offender, and (2) communicate to him the State's last plea offer made during the trial. Trial Counsel filed an affidavit in response to Sewell's allegations. The State elected not to do so. I have concluded that Sewell's allegations are correct and have granted his Amended Motion for Postconviction Relief.[1]

## The Plea Offers

The State sent, among other discovery, Sewell's criminal history to Trial Counsel on July 29, 2013. Thus, Trial Counsel should have known that Sewell was at risk of habitual sentencing if convicted.

---

[1] Sewell made a number of other arguments in his original *pro-se* motion for postconviction relief. Sewell's appointed postconviction counsel did not pursue any of them. I have rejected them as being conclusory.

1. The First Plea Offer – October 22, 2013

The State offered Sewell a plea to Assault in the First Degree, Possession of a Firearm During Commission of a Felony, Possession of a Deadly Weapon by a Person Prohibited, and Conspiracy in the Second Degree. The total sentencing range was seven to 60 years with no State recommendation and a presentence investigation.

2. The Second Plea Offer – December 11, 2013

This was the same as the first plea offer.

3. The Third Plea Offer (The First Final Case Review) – February 7, 2014

The general outline of the plea was the same except that the State made a recommendation of seven years at Supervision Level 5 with no presentence investigation. This offer also included a probation recommendation for Sewell's pending violation of probation. It was, as pleas sometimes go, a much better plea offer than the first two plea offers because the State had made a sentencing recommendation which was the same as the mandatory sentence that Sewell faced under the plea. Trial Counsel told the Court that Sewell had rejected the plea and that he faced a sentence of 30 to 110 years and was rejecting seven to 60 years. Trial Counsel was wrong because Sewell faced a mandatory 81 years, not 30 years.

4. The Fourth Plea Offer (The Second Final Case Review) – March 19, 2014

The trial was continued because one of the State's witnesses was unavailable.

There is no written plea offer in the file. Trial Counsel stated that the "plea offer was seven to fifty with a PSI for seven or mandatory." I took this to be the same as the Third Plea Offer. This was the first proceeding where habitual sentencing was mentioned. The full colloquy is as follows:

> TRIAL COUNSEL: Good morning, Your Honor.
>
> THE COURT: Good morning.
>
> TRIAL COUNSEL: I've gone over the last plea offer from Mr. Gelof to Mr. Sewell. Mr. Sewell rejects it. We're ready for trial.
>
> The plea offer was seven to fifty with a PSI for seven or mandatory. If he is not treated as a habitual, it is eight to ninety-one. His previous felony convictions have been conspiracy second and two counts of failure to stop at the signal of a police officer, which is a traffic crime.
>
> Mr. Gelof and I slightly disagree on whether or not a traffic-style offense can make someone habitual. I thought there was an exclusion for that. I couldn't find it with a quick look up in the code today; but when the motion is filed, I will vigorously defend it.
>
> I've not seen - -
>
> THE COURT: Basically, you are saying the top end without habitual is basically life?
>
> TRIAL COUNSEL: The top end without habitual is 91.
>
> THE COURT: Right.
>
> TRIAL COUNSEL: But if he's found habitual, then it starts at 91.

THE COURT: All right.  Okay.  Is it your desire to go to trial?

THE DEFENDANT: (Nodding in the affirmative.)

THE COURT: The trial date will be – what day next week?

TRIAL COUNSEL: July 31 – I am sorry, not July 31st.  March 31st, Your Honor.  It starts the following Monday, the fifth week of the month.

THE COURT: All right.  We do not plea negotiate on that day.   If it is resolved with a plea, it has to be resolved before then.

   Do you understand all of that?

THE DEFENDANT: Yes.

THE COURT: It is your decision to go to trial?

THE DEFENDANT: Yes.

THE COURT: All right.  Thank you.

TRIAL COUNSEL: Thank you, Your Honor.[2]

5.  The Fifth Plea Offer – Mid-Trial

The Prosecutor stated at sentencing that during the trial he gave a draft habitual offender motion and a copy of the recently released *Wickkiser*[3] case to Trial Counsel and extended the last plea offer to Trial Counsel again.  Trial Counsel acknowledges that the Prosecutor gave him the *Wickkiser* case on the fourth day of trial, but denies

---

[2] *State of Delaware v. Derrick Sewell*, Crim. Act. Nos. 13-06-0542 through 0551, at 24 (Del. Super. Ct. Mar. 19, 2014) (Transcript).

[3] *Wickkiser v. State*, 89 A.3d 478, 2014 WL 1258306 (Del. 2014) (Table).

that the Prosecutor extended the last plea offer again during the trial. The Delaware Supreme Court issued *Wickkiser* on March 25, 2014. Sewell's trial began on March 31, 2014. I, based on my comments at sentencing, received a copy of *Wickkiser* from one of the lawyers during the trial. *Wickkiser* made it clear that Sewell's two convictions for Failing to Stop at the Command of a Police Officer qualified as predicate offenses for habitual sentencing.[4]

<u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Constitutional ineffective assistance of counsel claims are generally evaluated under the two-pronged test set forth in *Strickland v. Washington.*[5] To establish a claim, a petitioner must show: (a) counsel's deficient performance, i.e., that his attorney's performance fell below "an objective standard of reasonableness,"[6] and (b) prejudice, i.e., that confidence in the result of the original proceeding is undermined due to counsel's deficiencies.[7] To establish prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

---

[4] *Id.* at *1.

[5] *Strickland v. Washington*, 466 U.S. 668 (1984); *see also Williams v. Taylor,* 529 U.S. 362 (2000); *Wiggins v. Smith*, 539 U.S. 5120 (2003); *Rompilla v. Beard*, 545 U.S. 374 (2005).

[6] *Strickland*, 466 U.S. at 688.

[7] *Id.* at 694.

6

probability sufficient to undermine confidence in the outcome."[8]  This standard has been termed as one that is lower than "more likely than not."[9]  Moreover, [t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[10]

## PLEA NEGOTIATIONS

Defense counsel has the duty to communicate plea offers to a client.[11]  Defense counsel also has the duty to provide to a client reasonable and legally correct advice regarding the consequences of accepting or rejecting a plea.[12]

## PREJUDICE

Where defense counsel has failed to comply with his duties to a client regarding plea negotiations, a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that

---

[8]  *Strickland*, 466 U.S. at 694.

[9]  *Neal v. State*, 80 A.3d 935, 942 (Del. 2013).

[10]  *Cooke v. State*, 977 A.2d 803, 840 (Del. 2009) (quoting *Strickland*, 466 U.S. at 686)

[11]  *Missouri v. Frye,* 566 U.S. 134, 145 (2012).

[12]  *Lafler v. Cooper*, 566 U.S. 156 (2012).

7

the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.[13]

## Habitual Offender Advice

I have concluded that Trial Counsel was ineffective because he did not advise Sewell that he faced habitual offender sentencing. Sewell and Trial Counsel disagree about this. Sewell faced habitual offender sentencing as soon as he was indicted. The record makes it clear that Trial Counsel did not accept that Sewell faced habitual offender sentencing. Thus, regardless of the fact that Trial Counsel and Sewell disagree about this, Trial Counsel could not have advised Sewell properly.

On February 7, 2014, at Sewell's First Final Case Review, Trial Counsel, when stating that Sewell had rejected the plea, stated that Sewell faced 30 to 110 years and that he was turning down seven to 60 years. Trial Counsel was wrong. Sewell did not face a minimum of 30 years. Sewell faced what turned out to be a minimum of 81 years.

On March 19, 2014 at Sewell's Second Final Case Review, Trial Counsel, while stating that if Sewell was convicted of all charges and was found to be habitual his sentence started at 91 years, said that he disagreed with the Prosecutor that two

---

[13] *Id.* at 164.

of Sewell's predicate felonies, both felony Failing to Stop at the Command of a Police Officer convictions, qualified as predicate offenses. Trial Counsel was wrong again.

During the trial, the Prosecutor gave Trial Counsel the *Wickkiser* decision, which should have put to rest any possible confusion on Trial Counsel's part about the issue. Notwithstanding that, at sentencing, Trial Counsel still expressed doubts about both whether (1) Sewell faced habitual sentencing, and (2) the Supreme Court made the correct decision in *Wickkiser*, stating:

> "So the General Assembly made it a felony offense, but I believe there was testimony that I don't think was considered by the Supreme Court previously, that is the Legislative history, that Title 21 offenses did not serve as the basis for habitual offender."

Trial Counsel added that he would not pursue the argument at sentencing, but would instead pursue it on appeal. Trial Counsel pursued it on appeal and lost. The Supreme Court disposed of Trial Counsel's argument in one short paragraph. The following is the applicable quote from the Supreme Court's decision:

> First, Sewell claims that it was error to declare him an [H]abitual Offender under 11 *Del. C.* §4214(a) because the previous offenses were Title 21 felonies. This Court held in *Wickkiser v. State*,[14] that "Section 4214(a) does not exclude Title 21 felonies as qualifying felonies."[15] The trial court acted properly when it found Sewell was an habitual offender.

---

[14] *Wickkiser*, 2014 WL 1258306, at *1.

[15] *Id.*

Thus, Sewell's first claim has no merit.[16]

Trial Counsel added another curious statement at sentencing, stating:

> THE COURT: All right. How about the habitual offender motion?
>
> TRIAL COUNSEL: Habitual offender motion, Mr. Gelof provided me a draft during trial and filed one with the Court this week. The problem that I see is when we came to final case review, I had no information there would be a habitual offender motion being filed, and so what I told Mr. Sewell was based on the maximum of those sentences as a non-habitual offender.[17]

That is what Trial Counsel said he told Sewell. Of course, at Sewell's Second Final Case Review he said that if Sewell was found to be habitual his sentence started at 91 years. I wonder what Trial Counsel actually told Sewell. He obviously told the Court one thing and Sewell something else. In any event, there is no doubt that Trial Counsel seriously doubted whether Sewell faced habitual sentencing from the beginning of the case all the way to the Supreme Court appeal. As such, any advice that Trial Counsel gave Sewell about habitual sentencing is deficient because Trial Counsel was simply wrong from start to finish.

---

[16] *Sewell v. State*, 128 A3d 994, at \*\*2 (Del. 2015)(Table).

[17] *State of Delaware v. Derrick Sewell,* Crim. Act. Nos. 13-06-0542 through 0551, at 2-3 (Del. Super. Ct. May 23, 2014)(Transcript).

<u>The Trial Plea Offer</u>

I have concluded that Trial Counsel was ineffective because he did not present the Fifth Plea Offer to Sewell during the trial. Sewell alleges that Trial Counsel did not tell him about it. The Prosecutor and Trial Counsel have differing recollections about whether the State extended one final plea offer to Sewell during the trial. The Prosecutor says he did. Trial Counsel, at sentencing, said he did not. Trial Counsel, in his affidavit, said that on the third day of trial the Prosecutor handed him the *Wickkiser* case and that "no additional or revised plea offer was made by the State at that time to my recollection." Thus, the Prosecutor remains adamant that he did and that Trial Counsel's recollection is that the Prosecutor did not.

At sentencing, after Trial Counsel stated that he went to the final case review not expecting the State to pursue habitual sentencing, Trial Counsel and the Prosecutor engaged in the following exchange:

> MR. GELOF: Your Honor, can I just put something on the record, because I don't think it was factually accurate?
>
> There may have been a time I maintained early on, well before final case review, that I thought he was a habitual offender and filed the draft. In addition, while Mr. Brady – I don't know the timing of it, but at the point that I supplied that case, I left the prior plea offer open and said, you understand this applies, provided we win the case.
>
> So he had an opportunity to take the prior plea offer after the case and after the State filed the draft motion. To put it on the record that

11

that was not explained to him and the State's view is inaccurate, he had that knowledge that the State was going to seek it.

And not only did I inform him of it, I provided him the case. I left the plea offer open, and it was rejected. So I think that should be clarified for the record.

TRIAL COUNSEL: And again, because this case was just that way, Mr. Gelof did provide me that case on Day 4 of trial, at which point he said, when we started trial, all plea offers were revoked.[18]

I believe the record supports my conclusion that the Prosecutor gave *Wickkiser* to Trial Counsel during the trial and that the Prosecutor kept the plea offer open for a number of reasons. One, the timing of the issuance of *Wickkiser* supports my conclusion. The Second Final Case Review was on March 19, 2014. The Delaware Supreme Court issued *Wickkiser* on March 25, 2014. Sewell's trial started on March 31, 2014. Thus, the Prosecutor could not have given *Wickkiser* to Trial Counsel at Sewell's Second Final Case Review. Two, the Prosecutor and Trial Counsel both agree that the Prosecutor gave *Wickkiser* to Trial Counsel during the trial. Three, my comments at sentencing state that one of the attorneys gave me a copy of *Wickkiser* during the trial. Thus, there is no doubt that the Prosecutor gave *Wickkiser* to Trial Counsel during the trial.

I conclude that the Prosecutor gave Trial Counsel the *Wickkiser* case and the

---

[18] *Id.* at 5-6.

12

draft habitual offender motion during the trial in one last ditch effort to convince Trial Counsel that Sewell was eligible for habitual sentencing, that the Prosecutor would seek habitual sentencing, and that Sewell would be wise to accept the plea offer. If the Prosecutor had no intention of keeping the plea offer open during the trial, then there was no point in giving Trial Counsel the draft habitual offender motion and the *Wickkiser* case. The Prosecutor obviously did so in an effort to avoid the mess that we are now in. The fact that the Prosecutor was adamant at sentencing about keeping the plea offer open and his decision not to file an affidavit challenging Sewell's allegations in his Amended Motion for Postconviction Relief and Trial Counsel's uncertainty about whether the Prosecutor made a plea offer during the trial and the timing of the issuance of *Wickkiser* all support my conclusion that the State made one last plea offer during the trial. There is no doubt that Trial Counsel did not present the last plea offer to Sewell during the trial. Thus, Sewell had no opportunity to accept it.

Prejudice

I do find that there is a reasonable probability that Sewell would have accepted the Trial Plea Offer. The question is why would Sewell take a plea that he had previously rejected. I reach this conclusion for two reasons. One, if Trial Counsel had properly explained to Sewell that he was not facing a mandatory seven years if

13

convicted but 81 years instead, Sewell would have had a correct understanding of what he was facing. Two, the trial was not going well for Sewell when the Prosecutor made the Trial Plea Offer. After three days of trial, four witnesses who were at the outdoor party had testified that they saw Sewell shoot Howard Whaley.[19] Three of the witnesses, Jacqueline Boyer, Jeremy Ricketts, and Marvin Burton, all knew Sewell before the shooting and identified him in Court as the shooter. The Fourth witness, Lakeshia Boyer, did not know Sewell but identified him in Court as the shooter. All four witnesses testified that Sewell got the gun he used to shoot Howard Whaley from Precious Tiggs. There is no doubt Sewell was prejudiced. He went from a seven-year mandatory sentence to an 81-year mandatory sentence as a result of Trial Counsel's actions. If Sewell had accepted the Trial Plea Offer, I would have accepted it and sentenced Sewell to a sentence that was less than the mandatory 81 years.

## Conclusion

Defendant Derrick Sewell's Amended Motion for Postconviction Relief is Granted. The remedy is for the State to again offer the Trial Plea Offer to Sewell.[20]

---

[19] The first day of trial was used for jury selection and various pretrial matters. Thus, things were not going well for Sewell after only two days of testimony.

[20] *Lafler,* 566 U.S. at 174.

14

IT IS SO ORDERED.

Very truly yours,

*/s/ E. Scott Bradley*

E. Scott Bradley

ESB/sal
cc:     Prothonotary

15